IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THAYNE GOLDEN,
           Plaintiff,

                                     CV 06-336-PK

                                     OPINION AND
v.                                  ORDER

ASH GROVE CEMENT COMPANY,
           Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Thayne Golden originally filed this action against defendant Ash Grove Cement

Company ("Ash Grove") in the Multnomah County Circuit Court for the State of Oregon. On

March 10, 2006, Ash Grove removed the action to this court on the basis of diversity

jurisdiction. Golden's complaint raises claims of negligence and of violation of Oregon's

Employer Liability Law (the "ELL"), each arising out of an injury Golden suffered while on Ash

Grove's premises. Ash Grove now moves for partial summary judgment, seeking dismissal of

plaintiff's ELL claim only.

Page 1 - OPINION AND ORDER

This court has considered Ash Grove's motion, the pleadings on file, and oral argument on behalf of both parties. For the reasons set forth below, Ash Grove's motion for partial summary judgment is denied.

## FACTUAL BACKGROUND

At the time Golden's injury took place, he was an employee of the Lime Hauling Company, which is not a party to this action. At all material times, Lime Hauling's sole business was to transport lime products from Ash Grove to a facility operated by the Owens Corning company. Lime Hauling received compensation for such services directly from defendant Ash Grove.

On February 25, 2004, Lime Hauling was retained to transport a load of limestone flour from Ash Grove's Rivergate Lime Plant to the Owens Corning facility. To fill the order, Lime Hauling dispatched a trailer truck driven and operated by Golden. At that time, Golden had been running loads of limestone on Lime Hauling's behalf from Ash Grove to Owens Corning for approximately five years, and he was thoroughly acquainted with Ash Grove's loading procedures and regulations.

Lime Hauling's trailer trucks are loaded through a hatch located on the top of the trailer, and unloaded through a port at the bottom. In an effort to comply with Federal Mine Safety and Health Administration regulations requiring the use of fall-protection devices by truck drivers working at elevated heights, Ash Grove provides three truck access ramps for drivers to use when accessing the loading hatches, and requires drivers to use these ramps rather than ladders affixed to the sides of the trailers. Approximately one year after Golden first began working the Ash Grove-Owens Corning route, and approximately four years prior to his injury, he was

Page 2 - OPINION AND ORDER

reprimanded by Ash Grove personnel for using his trailer's ladder to access the loading hatch, and was asked to use the ramp instead. Golden thereafter complied with Ash Grove's procedural requirements, and always used the ramp to open his trailer hatch while on Ash Grove's premises.

The truck access ramps provided by Ash Grove are equipped with an extensible gangway that operators must slide along a metal track in order to align the gangway with the loading hatches of trailers parked alongside the ramp. Both the ramp and the gangway are surrounded by a metal railing, and the end of the gangway is comprised of a metal cage that completely surrounds the hatch, so that use of the ramp and gangway provide protection against falling from the height of the trailer top.

One of Ash Grove's truck access ramps is located beneath a conveyor belt used to transport "three inch minus" gravel (gravel ranging from a maximum of three inches in diameter down to fine-ground particulate). Debris occasionally falls from this conveyor belt, and from time to time fouls the metal track used to move the extensible gangway. It was this ramp Golden was using to access his loading hatch on February 25, 2004, when he suffered the injury that underlies this action. Golden was pulling the gangway along its metal track when the gangway abruptly came to a halt, evidently having struck up against gravel debris lodged in the track. Golden alleges that the gangway's abrupt stop caused severe injury to his lower back. Golden further alleges that Ash Grove is liable for his injury, under a theory of common-law negligence and under Oregon's Employer Liability Law.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues

exist for trial. *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the

district courts of the United States must draw all reasonable inferences in favor of the

nonmoving party, and may neither make credibility determinations nor perform any weighing of

the evidence. *See*, *e.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v.

Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## ANALYSIS

**I       The Employer Liability Law**

The Employer Liability Law is codified at Sections 654.305-336 of the Oregon Revised

Statutes, and requires a heightened degree of care of employers and others having charge of

work involving risk or danger. In particular, Section 305 provides that:

> Generally, all owners, contractors or subcontractors and other **persons having
> charge of, or responsibility for, any work involving a risk or danger to the
> employees or the public** shall use every device, care and precaution that is
> practicable to use for the protection and safety of life and limb, limited only by
> the necessity for preserving the efficiency of the structure, machine or other
> apparatus or device, and without regard to the additional cost of suitable material
> or safety appliance and devices.

O.R.S. 654.305 (emphasis supplied). Thus, to prove a defendant's violation of the ELL, a

plaintiff must establish that the defendant had responsibility for work involving "risk or danger"

as that phrase is used in the statute.

Oregon case law makes clear that an ELL plaintiff not directly employed by the

defendant must further establish "indirect employment" in order to prevail on an action brought under the statute:

> Before the EL[L] can be made the basis of a claim for relief by an injured worker suing **a defendant other than an employer of the worker**, . . . the defendant must be in charge of or have responsibility for work involving risk or danger **in either (a) a situation where defendant and plaintiff's employer are simultaneously engaged in carrying out work on a common enterprise, or (b) a situation in which the defendant retains a right to control or actually exercises control as to the manner or method in which the risk-producing activity is performed**.

*Miller v. Georgia-Pacific Corp.*, 294 Or. 750, 754 (1983) (emphasis supplied); *see also Woodbury v. CH2M Hill*, 335 Or. 154, 160 (2003) (defining an indirect employer for ELL purposes as "a person or entity who (1) is engaged with the plaintiff's direct employer in a common enterprise; (2) retains the right to control the manner or method in which the risk-producing activity was performed; or (3) actually controls the manner or method in which the risk producing activity is performed") (internal quotation marks and footnote omitted).

Here, Ash Grove argues both that the work that caused Golden's injury did not involve the requisite "risk or danger" and that Ash Grove was not Golden's indirect employer. After considering all of the evidence presented by the parties, and drawing all reasonable inferences therefrom in plaintiff's favor, this court finds that the record raises questions of material fact as to each challenged element, and on that basis denies Ash Grove's motion.

## II        Work Involving "Risk Or Danger"

As noted above, the protections of the Employer Liability Law extend only to employees engaged in work involving "risk or danger." Although the plain language of the statute is consistent with the proposition that *any* work in which an employee suffers injury must necessarily involve *some* degree of risk, the Oregon Supreme Court has expressly rejected any

Page 5 - OPINION AND ORDER

such interpretation. *See*, *e.g.*, *Bottig v. Polsky*, 101 Or. 530, 546-547 (1921). Instead, the Oregon courts have construed the phrase "work involving a risk or danger" as referring strictly "to employments which are inherently dangerous," *Snyder v. Prairie Logging Co.*, 207 Or. 572, 577 (1956), a locution which at least one court has interpreted to mean work involving an "enhanced degree" of risk or danger, *Short v. Federated Livestock Corp.*, 235 Or. 81, 86 (1963).

The ELL decisions specify that "in determining whether, as a matter of law, a particular employment does or does not involve risk or danger. . . , the most important consideration is the nature and character of the work actually being performed at the time and place the injuries were received and, in particular, the nature of the duties of the injured employe[e] in connection therewith." *McLean v. Golden Gate Hop Ranch of Oregon, Inc.*, 195 Or. 26, 34 (1952). The case law further instructs that "no employment is afforded the protection of the [ELL] unless it presents dangers which are *uncommon*. Dangers of that kind . . . may be caused by unenclosed trap doors, defective scaffolding or unsuitable materials." *Barker v. Portland Traction Co.*, 180 Or. 586, 604 (1946) (emphasis supplied).

Of crucial relevance to this court's decision is the proposition, frequently repeated in the ELL jurisprudence, that "the question of whether a particular employment is inherently dangerous is for the jury to decide . . . , and it is only in clear cases that the court is authorized to decide, as a matter of law, that the work does not involve risk and danger. . . ." *Snyder v. Prairie Logging Co.*, 207 Or. 572, 577 (1956). Indeed, the Oregon courts generally reserve the "risk or danger" question for jury determination, even in cases where the employment in question does not involve any evident "uncommon" risk of injury. *See*, *e.g.*, *Richardson v. Harris*, 238 Or. 474, 477 (1964) (where plaintiff was injured when he "struck his knee on a steel rung" while

climbing a ladder in an enclosed space, "the question of risk or danger [wa]s for the jury" as a matter of law); *Snyder*, 207 Or. at 577 (holding that, although scaling logs does not seem inherently dangerous, as a matter of law it was for a jury to decide whether scaling logs in the vicinity of potentially dangerous activities posed a risk or danger); *Hamilton v. Redeman*, 163 Or. 324, 341 (1939) (finding reversible error where the court below took from the jury the question whether digging in a gravel pit involved risk or danger); *Bottig*, 101 Or. at 549 (holding that although stacking empty barrels was not generally considered dangerous, "it is a question of fact for the jury to decide whether the work was *rendered* inherently dangerous" by the "attending circumstances and conditions," including the possibilities that the barrels were "greasy," that the light was poor, or that the barrels were imprudently stacked, and therefore ruling "the contention that the [ELL] is as a matter of law inapplicable cannot be sustained") (emphasis supplied); *Poullos v. Grove*, 84 Or. 106, 114 (1917) (where plaintiff was required to work on the second story of a barn with a visible but unenclosed trap door, the question of "risk or danger" was for a jury to decide as a matter of law); *see also*, *e.g.*, *Woodbury*, 335 Or. at 163 (error to take from the jury the question whether working at elevation without fall protection created a risk or danger); *Kruse v. Coos Head Timber Co.*, 248 Or. 294, 304 (1967) (holding that plaintiff's injury necessarily created a "jury question whether the work was so inherently dangerous or presented dangers so uncommon that the employment would be classed as work involving 'risk or danger'"); *Parks v. Edward Hines Lumber Co.*, 231 Or. 334, 337 (1962) (finding reversible error where the court below took from the jury the question whether plaintiff was injured while engaged in work involving "risk or danger").

However, the decisions of the Oregon courts fail to cleave to a bright line rule.  In a

Page 7 - OPINION AND ORDER

minority of cases, the Oregon Supreme Court has found as a matter of law that work did *not* involve risk or danger; in some of these cases, the risk-creating propensity of the work at issue is arguably not materially distinguishable from that in other cases where "risk or danger" necessarily raised a question of fact. *See Wells v. Nibler*, 189 Or. 593, 598 (1950) (reversible error to permit jury to decide whether sawing a limb from a tree involved risk or danger; holding that such work was *not* inherently dangerous as a matter of law); *see also Short*, 235 Or. at 87-88 (feeding pigs did not involve risk or danger as a matter of law); *McLean*, 195 Or. at 34 ("ordinary farming" did not involve risk or danger as a matter of law); *Barker v. Portland Traction Co.*, 180 Or. 586, 604 (1946) ("removing . . . snow from [a] clogged [streetcar] switch" did not involve risk or danger as a matter of law); *O'Neill v. Odd Fellows Home*, 89 Or. 382, 390 (1918) (using a rickety stepladder to hang laundry out to dry did not involve risk or danger as a matter of law).

Here, Golden's duties required him to slide a heavy gangway along a metal track located underneath a conveyor belt used to transport gravel debris of a kind that could and occasionally did foul the track, all at an elevated height. Golden's back was injured when the gangway came to an abrupt stop while Golden was pulling it.

As a preliminary matter, this court concludes that the elevation at which Golden was required to work is immaterial to the question now before this court. Golden's injury was entirely unrelated to the height at which he was working, and it is well settled that where a plaintiff's injury has a proximate cause other than the risk or danger presented by the plaintiff's employment duties, the ELL is inapplicable. *See Barker*, 180 Or. at 607, 610.

The question properly before the court is whether, without regard to elevation, a

reasonable jury could conclude that risk or danger was involved where Golden was required to slide a heavy gangway along a metal track subject to blockage by falling debris. Following the concededly vagarious precedent established by Oregon's ELL jurisprudence, this court is unwilling to invade the province of the jury to make this determination as a matter of law. The conveyor belt transporting gravel debris above the metal track, creating the systematic risk that the track would be blocked without easily observable evidence of the blockage, constitutes an "attending circumstance[]" of the kind that necessarily created a jury question in *Bottig*, *supra*, and other ELL cases. On the record before the court, there is an unavoidable question of material fact as to whether Golden's work involved "risk or danger" as that phrase is used in the ELL.

### III      Indirect Employer

As noted above, Oregon law recognizes two separate tests that must be analyzed to determine whether Ash Grove is Golden's indirect employer for Employer Liability Law purposes. Under the "common enterprise" test, where two employers participate in a risk-creating activity such that the defendant employer's operations are an "integral" or "component" part of the plaintiff's employer's operations, the ELL may apply. *See Sacher v. Bohemia, Inc.*, 302 Or. 477, 486-487 (1987); *see also Myers v. Staub*, 201 Or. 663, 668 (1954) ("It is not always necessary that the defendant be the injured workman's immediate employer but may be sufficient if such defendant's interlocking interests with the employer amount to an intermingling of duties and responsibilities so as to bring the relationship of the defendant to the workman within the spirit of the Employers' Liability Law") (citations and internal quotation marks omitted).

Drawing all reasonable inferences in plaintiff's favor, a finder of fact could reasonably

Page 9 - OPINION AND ORDER

conclude from the evidence in the record that Lime Hauling's operations and those of Ash Grove interlocked to form an integral whole. Lime Hauling's sole business was to transport Ash Grove's product to Ash Grove's customer, for which it received compensation directly from Ash Grove. Lime Hauling served no other clients. Ash Grove's customer, Owens Corning, purchases lime products from Ash Grove, and expects Ash Grove to arrange delivery of such products directly to Owens Corning's facility.

The record therefore permits the conclusion that Lime Hauling provides a necessary, integral component of the service Ash Grove markets to its customer. Moreover, it is specifically the activity of using Ash Grove's equipment to load lime product for delivery that Golden has identified as risk-creating. On this record, there is at least an issue of fact as to whether Ash Grove was Golden's indirect employer for ELL purposes under the "common enterprise" test.

A similar conclusion obtains under the "control" test. In *Woodbury*, *supra*, the Oregon Supreme Court considered whether a defendant exercised control over the risk-creating activity of working at elevation while assembling, using, and disassembling a wooden platform designed to reduce the risk of injury while installing a pipeline. *See Woodbury*, 335 Or. at 161-162. The court explained that where "there was evidence from which the jury reasonably could conclude that defendant exercised actual control both over the decision to use a wooden platform and over the choice of how that platform was constructed," the evidence was sufficient "to support a jury finding that defendant exercised actual control over the manner or method in which the risk-producing activity . . . was performed and, therefore, [that] defendant was liable under the ELL." *Id.* at 162-163; *see also Moe v. Eugene Zurbrugg Constr. Co.*, 202 Or. App. 577, 585-586

(2005) (to same effect).

Here, as noted above, the activity that Golden identifies as risk-creating can properly be construed as sliding a movable gangway along a metal track subject to fouling by debris.  A finder of fact could reasonably conclude that Ash Grove exercised actual control over whether and how the truck access ramps were constructed, including both the gangway and the metal track in which it moved.  In addition, the fact-finder could conclude that the decisions whether to shield the track from falling debris and how frequently to conduct maintenance on the track were within Ash Grove's sole discretion.  Finally, the evidence in the record establishes that Ash Grove sought to require truckers to use the truck access ramps when accessing their loading hatches.  Accordingly, there is an issue of fact as to whether Ash Grove was Golden's indirect employer for ELL purposes under the "control" test.

## CONCLUSION

For the reasons set forth above, defendant Ash Grove's motion for partial summary judgment (#20) as to plaintiff's second cause of action, alleging defendant's violation of Oregon's Employer Liability Law, is denied.

Dated this 21st day of May, 2007.

 /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 11 - OPINION AND ORDER